(C. D. 453)

NICHOLS COPPER CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 19, 1941)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney), for the defendant. *James L. Gerry* appearing as *amicus curiae*.

Before TILSON, KINCHELOE, and DALLINGER, Judges; KINCHELOE, J., not participating

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation described in the *pro forma* invoice as "Bulk Silver Ores, weighing 705525 Kilos." The merchandise was classified by the collector as free of duty under the provision in paragraph 1734 of the Tariff Act of 1930 for "Ores of gold, silver, or nickel." However, a duty of 1½ cents per pound was levied on the zinc contained in said ores under the following provision in paragraph 393 of said act:

Zinc-bearing ores of all kinds, except pyrites containing not more than 3 per centum zinc, 1½ cents per pound on the zinc contained therein: *Provided*, That such duties shall not be applied to the zinc contained in lead or copper ores unless actually recovered: * * *.

Apparently the only claim in the protest relied upon by the plaintiff is that alleging free entry for the merchandise under the following paragraph of said act:

PAR. 1664. Metallic mineral substances in a crude state, such as drosses, skimmings, residues, brass foundry ash, and flue dust, not specially provided for.

The case was originally decided by us in favor of the Government on February 6, 1940, in *Nichols Copper Co.* v. *United States*, C. D. 282. It is again before us as the result of a rehearing granted the plaintiff.

At said rehearing, held at New York on June 13, 1940, the plaintiff offered in evidence the testimony of three additional witnesses. The first, Harvey M. Burkey, chief metallurgist for the American Metal Co., Ltd., testified that he was in charge of smelting operations for that company and was familiar with the different metallic mineral

substances that are used in copper smelters. The witness then testified in part as follows:

Q. It has been testified in this case, Mr. Burkey, that the plaintiff paid approximately $18. per ton for the material represented on Collective Exhibit 1, and that 33 ounces of silver, and .16 of an ounce of gold in each ton yielded approximately $21. It has been further testified that the plaintiff's plant cost is $7.56 per ton for treatment of this material, leaving a net loss on each ton of $4.56. Based upon your experiences, Mr. Burkey, can you tell us whether this material can be, or rather whether the metals contained in this material can be profitably extracted * * *?—

* * * * * * *

A. It is not possible to smelt a material of this kind and make a profit. The difference of about four dollars represents the loss.

Judge KINCHELOE. You mean it is not possible to extract that zinc?

The WITNESS. Oh, no, sir; absolutely not. The zinc goes into the slag and is lost.

* * * * * * *

By Mr. ISRAEL.

Q. A material which is 60 per cent silica, as is the merchandise at bar, is used primarily for what?—A. For a flux.

Judge DALLINGER. That has been your universal experience?

The WITNESS. Yes, sir.

By Mr. ISRAEL.

Q. Can you tell us what a flux is?—A. Well, a flux is an earthy material containing minerals and one or two of those constituents is utilized to counteract another constituent in an ore * * *.

* * * * * * *

Q. In your opinion, what is this material represented on Collective Exhibit 1?—A. Well, I should say that this is a crude mineral substance.

Q. And contains metals?—A. Yes. It contains 10 per cent zinc, 33 ounces of silver, and .16 of an ounce of gold.

Q. With the exception of the gold and silver, none of those metals are recovered?—A. None of them are recovered, except the gold and the silver.

Q. And it is not profitable to smelt and refine that material for the gold and the silver?—A. Alone, no.

Judge DALLINGER. Is there any lead or copper recovered?

The WITNESS. The lead is .74 per cent and the copper is .1 of one per cent. Now, the slag from which this is made will run higher in copper or lead than this ore, and increases the loss of those metals.

On cross-examination the witness testified in part as follows:

X Q. Mr. Burkey, this merchandise or material is used in the smelting furnace with other materials for the recovery, primarily, of copper, is it not?—A. Yes.

* * * * * * *

X Q. * * * the flux cost you $4. a ton; isn't that right?—

* * * * * * *

A. That is the value or the cost of the flux.

X Q. If you didn't use this as the flux, you would have to use some other material?—A. Yes.

X Q. Do you know of any other material you can buy for $4. a ton and use as a flux?—A No, I don't think so.

161

. The second witness for the plaintiff, Heath Steele, vice president of the American Metal Co., Ltd., and in charge of its mining and smelting operations, testified that he was familiar with the smelting of copper; that the merchandise at bar could only be used as a flux; and that it is not an ore but a crude metallic mineral substance.

· On cross-examination the witness testified in part as follows:

X Q. Have you ever just taken this material alone and smelted it?—A. No. You cannot do it as a practical business proposition.

Judge DALLINGER. Do I understand you to say that you cannot smelt this material, or this merchandise in question?

The WITNESS. No, it is not practical.

Judge DALLINGER. Have you ever heard of it being done?

The WITNESS. Not by anyone trying to make money.

\* \* \* \* \* \* \*

X Q. When you use iron as a flux you generally use iron ore?—A. Yes, but very often we have used the metallic iron. The word "ore" is a very general term in our business.

X Q. And you refer to this merchandise as an ore, generally, in your trade?— A. I would not consider smelting material as an ore, but as flux. We generally distinguish in our business between flux materials and ores.

X Q. You just stated that the term "ore" was a very general term in your trade.—A. It is a general term. What might be an ore to a miner is not an ore to a smelter. \* \* \*.

X Q. There is no question it is an ore, however, to miners or somebody else?— A. It is not in my definition of an ore.

The third and last of plaintiff's witnesses, William Spencer Hutchinson, professor emeritus in mining in the Massachusetts Institute of Technology, testified that while he personally had never smelted ores he had been engaged in the work of finding out what kind of materials could be profitably used in smelting operations; that in his opinion merchandise like that represented by collective exhibit 1 could not be profitably smelted; and that it is not an ore but is a crude metallic mineral substance.

On cross-examination the witness testified that he had known of iron ore being used as a flux; and that in smelting iron lime is used as a flux.

At the conclusion of the testimony counsel for the plaintiff moved to strike from the record of the previous hearing the affidavit of Philip B. Scott, which motion was denied and an exception granted the plaintiff. Permission was also given James L. Gerry, Esquire, to file a brief as *amicus curiae*.

While we are still of the opinion that our original decision in this case was justified by the record then before us, we are constrained in view of the record as now made, and a further consideration of the meaning of the word "ore" to hold that the plaintiff has made out a *prima facie* case. Although it is true, as pointed out by counsel for

the Government in his able brief filed herein, that ores are sometimes used as fluxes, nevertheless we are now convinced by the preponderance of authorities that within the common meaning of said term an ore is a natural or native mineral that may be profitably mined and treated for the extraction of any of its constitutents.

In Oxford Universal English Dictionary, vol. VI, the word "ore" is defined as—

A native mineral containing a precious or useful metal in such quantity, etc., as to make its extraction profitable;

in Murray's new English Dictionary as—

A native metal containing a precious or useful metal in such quantity and in such chemical combination as to make its extraction profitable;

in the Standard Dictionary of the English Language as—

A natural substance, sometimes forming part of a rock, containing one or more metals. The term is applied usually to a mineral from which the metal can be profitably extracted, but is sometimes extended also to non-metallic minerals; as sulphur *ore,*

in the Encyclopedia Americana (1032) as—

* * * any mineral or aggregation of minerals from which metal or metals can be extracted at a profit. * * *

in the Columbia Encyclopedia as—

A mineral mass from which, as commonly defined, metal can be extracted profitably for commercial use;

And in the New International Encyclopedia as—

A rock mass containing one or more metals in sufficient quantity and purity to warrant its exploitation.

In a publication issued by the Department of the Interior, Bureau of Mines, entitled "A Glossary of the Mining and Mineral Industry," by A. H. Fay, "ore" is defined as—"a metal of sufficient value as to quality and quantity which may be mined at a profit."

In the case of *F. E. Wallace & Co.* v. *United States,* C. D. 108, 2 Cust. Ct. 136, decided February 23, 1939, the First Division of this court said:

* * * The only question remaining for determination is whether or not rock salt is an ore containing a nonferrous metal within the meaning of that term as used in section 313 (b), *supra.*

It may be stated that there does not seem to be any serious dispute but that rock salt contains sodium, and that sodium is a nonferrous metal.

The issue therefore narrows down to the meaning of the word "ore" as used in the statute, *supra,* and whether or not rock salt responds to that meaning. A reading of section 313 (b), *supra,* leads to the conclusion that the word "ore" was not used therein in any technical sense. It is a word in common use, and there being nothing to show that it has a commercial meaning different from the common

meaning thereof the meaning to be ascribed to it is its natural, plain, ordinary and commonly understood meaning. It is well settled that the interpretation of words in common speech is within the judicial knowledge and therefore is matter of law. *Marvel* v. *Merritt*, 116 U. S. 11. It is likewise well settled that the court may refer to dictionary definitions, not as evidence establishing or controverting an issuable fact, but as aids to the memory and understanding of the court. *Nix* v. *Hedden*, 149 U. S. 304.

Upon resort to lexicographers, therefore, we find that "ore" is defined in Webster's New International Dictionary as—

a. A native compound containing one or more metals; sometimes, also, a native metal or even a valuable native nonmetal, as sulphur.

b. *Mining.* Any material containing valuable metallic constituents for the sake of which it is mined and worked; as, cinnabar is an *ore* of mercury; gold-bearing quartz is a gold *ore;* also; material mined and worked for nonmetals; as, pyrites is a sulphur *ore.*

and in the Century Dictionary as—

A metalliferous mineral or rock, especially one which is of sufficient value to be mined.

To the same general effect are the definitions referred to by plaintiff's witnesses Ralph C. Snowden, chief chemist of the plaintiff corporation, and Daniel B. Jackson, head of the Department of Engineering at Columbia University, from a work entitled "Economic Geology" by Heinrich Ries, stated to be a standard authority on the subject of ores. These definitions are as follows:

The term "ore deposits" is applied to concentrations of economically valuable metalliferous minerals found in the earth's crust, while under the term "ore" are included those portions of the ore deposit of which the metallic minerals form a sufficiently large proportion and are in proper combination to make their extraction possible and profitable.

Both of these witnesses testified that sodium *can be and is profitably extracted for commercial purposes* from rock salt. [Italics ours.]

Upon the entire record it is evident that there is no difference between the common and commercial meanings of the word "ore," to wit; a material containing metals which can be profitably extracted by smelting or other treatment.

It is uncontradicted that the material constituting the imported merchandise at bar cannot be profitably treated for extraction of any of the minerals contained therein, but that said material is used solely as a flux in the smelting of copper ore.

We therefore hold as a matter of law that the said imported material is not a zinc-bearing ore within the meaning of paragraph 393 of the Tariff Act of 1930, as classified by the collector, but that it is a metallic mineral substance in a crude state within the meaning of paragraph 1664 of said act, as alleged by the plaintiff. That claim is therefore sustained; but as to all other merchandise the claims are overruled. Judgement will be rendered accordingly.