TIE COMMUNICATIONS, INC., PLAINTIFF *v.* UNITED STATES, U.S. CUSTOMS SERVICE, AND DISTRICT DIRECTOR, CUSTOMS DISTRICT OFFICE, ST. ALBANS, VERMONT, DEFENDANTS

Court No. 91–04–00300

(Dated May 5, 1994)

*Skadden, Arps, Slate, Meagher & Flom (Rodney O. Thorson* and *Roger B. Banks)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Jeffrey. M. Telep* and *Vanessa P. Sciarra), Anna Tretter,* Office of Regional Counsel, United States Customs Service, of Counsel, for defendants.

## MEMORANDUM OPINION

MUSGRAVE, *Judge:* This matter is before the Court on cross motions for summary judgment. Plaintiff, TIE Communications ("TIE"), is a Canadian company that claimed duties exemptions for component telephone parts manufactured in the U.S., shipped overseas for assembly then returned to this country for sale. *See* Item 807.00, Tariff Schedules of the United States; 19 U.S.C. § 1202 (exemption for American Goods Returned). On July 11, 1986, a representative of TIE wrote Customs to acknowledge and apologize for errors in administering and complying with its 807.00 program from August 1984 to June 1986.

Customs investigated TIE's 807.00 program and bifurcated its assessments of duties and penalties in connection with the apparent violation of 19 U.S.C. 1592 (importations involving fraud or negligence), presenting on June 21, 1990, its claims for entries which were within the five year statute of limitations and withholding claims for duties on the entries that were older and time-barred by the statute of limitations.

The June 21, 1990 pre-penalty notice charged TIE with a violation of 19 U.S.C. § 1592 with respect to its 807.00 program, demanding payment of $179,238 in lost duties and $716,922 in penalties with respect to more that 40 entries during the period from September 11, 1985 to June 1, 1986. The notice charged TIE with gross negligence as the level of culpability in failing to obtain verification from vendors "to absolutely determine" that the parts were of U.S. origin and for not having inventory controls to ensure that U.S. parts were segregated from foreign parts. The notice required a response within seven days citing provisions in Customs Regulations which authorize this shorter than normal *(i.e.,* thirty days) notice period when the statute of limitations is about to run.

TIE promptly paid the duties demanded and petitioned for cancellation and/or mitigation of the penalties on grounds, *inter alia,* that there had been a prior disclosure by TIE of the circumstances of the violation

in June 1986 pursuant to 19 U.S.C. § 1592(c)(4),[1] that the facts did not support gross negligence, that there was contributory Customs error dating back to 1985, and that it could not afford to pay the penalties. On July 26, 1990, Customs denied TIE's petition but reduced the penalty to $448,076.00 on the basis that TIE had been cooperating, and permitted TIE to make the payments in twelve monthly installments without interest because of its poor financial condition.

On December 7, 1990, after the 90-day time period for filing a protest to the Customs headquarters previous ruling denying TIE's petition challenging the June 21, 1990 notice expired, the St. Albans Vermont District Office issued yet another notice to plaintiff demanding payment of $273,054.82 in additional duties (non-penalty) for separate violations under the 807.00 program for liquidated entries which were not included in the June 21, 1990 pre-penalty notice. Virtually all of these entries antedated the entries covered by the June 21, 1990 notice that had just been settled and for which Customs had represented that the statute of limitations was about to run. *See Memorandum in Support of Plaintiffs Cross Motion for Summary Judgment* at 6.

On December 21, 1990 and January 4, 1991, TIE submitted petitions seeking to set aside the December 7, 1990 notices because they were time-barred by the five year statute of limitations applicable to 19 U.S.C. § 1592. In addition, TIE alleges that it had understood that the prior agreement settled all penalty and non-penalty claims related to the 807.00 program investigation. Otherwise, TIE might well have challenged the original penalty assessments in court. *See Nunes Affidavit, para. 6, Plaintiff's Cross Motion for Summary Judgment; Matthews Aff., para. 5, Plaintiff's Cross Motion for Summary Judgment.* On March 4, 1991, TIE filed a protest incorporating the above-named petitions that challenged the duty demands included in the December 7, 1990 notices.

On April 8, 1991, TIE and its related companies filed petitions for reorganization under Chapter 11 of the Federal Bankruptcy Act in the U.S. District Court for the District of Delaware. TIE informed Customs that an automatic stay was in force and stated that it could not pay any outstanding claims pending its reorganization. *See Letter of TIE, April 11, 1991.*

Meanwhile, TIE brought a complaint in this Court seeking dismissal of the December 7, 1990 duty demands as time barred, and requesting rescission of its $448,076.00 settlement agreement that resulted from the June 21, 1990 notice. The Customs Service claimed that the Court did not have jurisdiction under 28 U.S.C. 1581(a) because no decision had been rendered by the Service on TIE's latest protest. The Court was persuaded by plaintiff's argument that Customs deliberately withheld decision on the protest to oust the Court jurisdiction, while manifestly demonstrating its intention to deny plaintiff's protest all the same. Any

---

[1] Section 1592(c)(4) substantially limits a party's liability when that party discloses the circumstances of the violation before, or without knowledge of, the commencement of a formal investigation of such violation. In the case of gross negligence, the penalty may be limited to the amount of unpaid lawful duties with interest.

further efforts at administrative exhaustion would have been frivolous, futile, and unavailing. Therefore, the Court asserted jurisdiction under 28 U.S.C. 1581(i) and enjoined Customs from collecting from TIE's brokers and sureties. *See Preliminary Injunction* (May 15, 1991).

Subsequently, defendants filed for summary judgment on both counts in plaintiff's Complaint. Plaintiff filed a cross motion for summary judgment on those same two claims.

### DISCUSSION

#### I. *Summary Judgment:*

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). A party who moves for judgment on the pleadings is deemed to admit all of the facts of the adversary's pleadings while denying their sufficiency as a matter of law. *U.S. v. ATAKA America, Inc.,* 17 CIT 598, Slip. Op. 93–112 at 6 (June 21, 1993), *citing Superscope, Inc. v. United States,* 12 CIT 283, 285 (1988). All ambiguities should be resolved and all reasonable inferences should be drawn in favor of the non-moving party. *Carter Footwear, Inc. v. United States,* 10 CIT 618, 621 (1986). The moving party has the burden of establishing that there is no triable issue of fact. *Standard Commodities Import & Export v. United States,* 9 CIT 609, 611 (1985).

The Court will not grant summary judgment merely because both parties contend that there are no factual issues. Regarding the first issue, the Court finds that the facts are sufficiently settled to render a decision on the legal question of whether the Customs Service's second duty claim is time barred. As for the second issue, regarding the propriety of rescinding the agreement between the parties settling the first duty claim by Customs, the Court finds that the facts are sufficiently in dispute to warrant denial of summary judgment.

#### II. *Statute of Limitations Regarding 19 U.S.C. 1592(d):*

As recited above, the parties recount consistent versions concerning the timing of the events surrounding the 807.00 entries and subsequent duty demands. As to the second set of demands, many of which were made more than five years from the date of entry, the parties seek a ruling on whether and if a statute of limitations has run to bar recovery of the non-penalty duty claims asserted in Customs' December 7, 1990 Notices.

The question of whether there is a statute of limitations on the collection of duties is a thorny one which has not been settled definitively in this Court. The general rule is that the United States is exempt from statutes of limitation unless Congress has expressly provided otherwise. *United States v. Ataka America, Inc.,* Slip Op. 93–112 at 5 (June 21, 1993), *citing United States v. City of Palm Beach Gardens,* 635 F.2d 337, 339 (5th Cir.), *cert. denied,* 454 U.S. 1081 (1981) and *Guaranty Trust Co.*

*v. United States,* 304 U.S. 126 132–33 (1938); *but see Lane v. United States,* 633 F.2d 1384, 1387 (1980) (laches applicable against government when it asserts an equitable claim for liability). For the purposes of the discussion of this case, it is important to understand how the different collection statutes interface and to distinguish between liquidation (fixing of the duty amount) and collection. The following is a brief overview of the statutes and procedures involved in liquidation and collection.

The Court has jurisdiction over an action to recover a civil penalty under 19 U.S.C. § 1592[2] and to recover customs duties.[3] 19 U.S.C. § 1505(b) provides that the appropriate customs officer shall collect duties but does not specify any time limit on that mandate. *United States v. Ataka America, Inc.,* Slip Op. 93–112 at 5. 19 U.S.C. § 1504(a) provides to that any entry not liquidated within one year from certain operative events listed in subsections (1)–(3), including the date of entry, shall be deemed liquidated at the rate of duty asserted at the time of entry by the importer, his consignee, or agent. Liquidation is defined as "the final computation or ascertainment of duties or drawback accruing on an entry." 19 C.F.R. Part 159.1 (1993). 19 U.S.C. § 1514 provides that liquidation *(i.e.,* assessment) of the duties is final, barring error (section 1520) or fraud (1521), unless a protest is filed within 90 days of the notice of liquidation or reliquidation.

Even in the case of fraud under section 521, the customs officer is only entitled to reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation. It is worth noting that a reliquidation under this section is not a criminal or quasi criminal proceeding, nor does it seek to enforce a penalty or work a forfeiture; it is merely a reassessment, in view of probable cause to suspect fraud, of duties properly due, and, as such, is purely civil in nature. *See Zucca v. U.S.,* 10 Ct. Cust. App. 133, 148 (1920).

In contrast, *penalties or forfeiture* of property may be enforced upon a determination by Customs Service that merchandise was entered by means of false oral or written submissions or material omissions for *up to five years.*[4] *See* 19 U.S.C. § 1592(a); 19 U.S.C. § 1621 (1988) (penalties or forfeiture property may be enforced up to five years from discovery of fraud or the commission of negligent acts). In the case of fraud, the pun-

---

[2] 28 U.S.C. § 1582(1).

[3] 28 U.S.C. § 1582(3).

[4] Section 1592(a) provides:

§ 1592 **Penalties for fraud, gross negligence, and negligence.**

(a) Prohibition.—

(1) **General rule.**—Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document, written or oral statement, or act which is material and false or

(ii) any omission which is material, or

(B) may aid or abet; any other person to violate subparagraph (A).

19 U.S.C. § 1592(a).

ishment may not exceed the value of the merchandise.[5] For gross negligence, the penalty may not exceed the lesser of the value of the merchandise or four times the lawful duties, or, if the violation did not affect assessment, the penalty may not exceed forty percent of the value of the merchandise.[6] For negligence, the penalty may not exceed the lesser of the value of the merchandise or two times the lawful duties, or, if the violation did not affect assessment, the penalty may not exceed twenty percent of the value of the merchandise.[7]

The particular subsection of section 1592 at issue here states:

> **(d) Deprivation of lawful duties.**—Notwithstanding section 1514 [liquidation final unless protested within 90 days] of this title, if the United States has been deprived of lawful duties as a result of a violation of subsection (a) of this Section, the appropriate customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed.

19 U.S.C. § 1592(d); *see also,* 19 U.S.C. § 1592(a), note 4, *supra.* Subsection (a) indicates that penalties may be assessed whether or not the lawful duties were affected by the violation, whereas subsection (d) indicates that the lawful duties must be collected regardless of the discretionary application of the penalty assessment Customs based its authority to collect lawful duties—even though the statute had run for penalty assessments—on this duality.

The Court of Appeals for the Federal Circuit recognized this element of independence of section 1592(d) from section 1592(a) (and *vice versa*). *See U.S. v. Blum,* 6 Fed. Cir. (T) 183, 186, 858 F.2d 1556, 1568–69 (Fed. Cir. 1988). In *Blum,* the court, in reversing the United States Court of International Trade, held that the United States could collect duties from the importer of record and the surety, under section 1592(d) even though the importing Company was the sole perpetrator of a section 1592(a) violation.[8]

The government in this case has cited the Court of Appeals for the Federal Circuit's proposition that subsections (a) and (d) are independent causes of action in an attempt to sever subsection (d) from the constraints of the five year statute of limitations that all parties agree applies to subsection (a). *See* 19 U.S.C. § 1621 Section 1621 limits actions to "recover any pecuniary penalty or forfeiture of property" to suits commenced within five years of discovery of fraud or within five years of the commission of a negligent or grossly negligent act. Since the *Blum,* court held that subsection (d) was independent and that it was not penalty provision,[9] the government contends section 1621 is not a

---

[5] 19 U.S.C. § 1592(c)(1).

[6] 19 U.S.C. § 1592(c)(2).

[7] 19 U.S.C. § 1592(c)(3).

[8] The Court below had found that subsection (d) merely provides the United States with authority only to collect lost import duties using the administrative process, and that subsection (d) could not be invoked against parties innocent of a subsection (a) violation. *U.S. v. Blum,* 858 F.2d at 1569; *see U.S. v. Blum,* 11 CIT 316, 660 F. Supp. 975 (1987).

[9] *Blum,* 858 F.2d at 1569.

applicable to it. Customs also contends that subsection (d) duties are not a forfeiture, and thereby they do not satisfy either element, penalties or forfeitures, of section 1621.

According to Customs' analysis, once cut loose from the moorings of section 1621, subsection (d) is free to float, forever unencumbered by time, in one of the famous interstices of congressional legislation in this domain that Customs so deftly exploits. This is so because subsection (d) by its plain meaning does away with the normal method of freezing liability, the finality of liquidation within ninety days under section 1514 in cases where no protest is filed.[10]

Plaintiff argues that section 1592 concerns "penalties." Therefore, all subsections under 1592 fall squarely within the qualifying terminology of section 1621, "pecuniary penalty or forfeiture."

The Court notes that while section 1621 does not explicitly reference section 1592 by name, the parties agree it applies to the principle content of section 1592, *i.e.*, subsections (a)–(c), providing for penalties. It makes little sense that Congress would design a statute of limitations to apply to the title of a section and the first three subsections, while exempting the fourth subsection without clearly making a reference to that effect either in that fourth subsection or the operative statute of limitations, *i.e.*, section 1621. Indeed, Congress did evidence contemplation of specific exceptions for subsection (d) when within its language Congress excluded the applicability of section 1514. The Court finds that on this basis alone Customs' reading of the statutory scheme is strained. Customs is rewarded, under its heading, for waiting as long as possible to collect lawful duties where affirmative proof of validity of claims is required of the importer. By waiting thus, Customs can collect "easy money," as evidence becomes stale, or strong-arm parties into expensive settlement agreements, as is alleged by TIE.

The Court adds that section 1592(c)(5) provides for "forfeiture" to "protect the revenue" of the United States; a term identical to one qualifying term in section 1621, "forfeiture." Arguably, the Customs service could commence forfeiture proceedings under section 1592(c)(5) within five years to "preserve revenue" in the form of insufficiently paid or deposited lawful duties as a result of a violation of subsection (a) of 1592. *See* 19 U.S.C. § 1592(c)(5); 19 U.S.C. § 1621. Nothing in section 1621 suggests that the forfeiture of property provision of section 1592 is limited to forfeiture to satisfy penalty demands rather than duty demands or both. Therefore, despite Customs' denials, the Court does find some overlap between section 1592 and section 1621 concerning the collection of lawful duties when subsections (d) and (c)(5) of section 1592 are read together with section 1621.

---

[10] This language in subsection (d) would appear to invalidate the characterization of the applicable time limitations in section IV of this Court's opinion in *United States v. Appendagez, Inc.,* 5 CIT 74, 81, 560 F. Supp. 50, 55 (1983) (stating that absent fraud under section 1521, section 1514 applies a time bar to actions not brought within 90 days of liquidation); *see* 19 U.S.C. 1592(d) ("Notwithstanding section 1514 of this title * * *.").

From this discussion arise several ambiguities which oblige an *in pari materia* reading of these statutes so that the legislature's intention can be gathered from the whole of the enactments. The Court recapitulates that Congress, for whatever reason, did not place an apparent limit on the collection of lawful duties when it enacted 19 U.S.C. § 1505(b). Congress did, however, place very precise limits on liquidation. *See e.g.,* sections 1514, 1520, and 1521. Congress also placed clear limits, which the parties concede, on the collection of "penalties" or "forfeitures." *See* 19 U.S.C. 1621. The problem lies in that the various statutes simultaneously overlap and leave gaps. At the same time, questions of collection have been confused with questions of liquidation.

For example, section 1521 opens the 90 day window for reliquidation under section 1514 to two years from the date of liquidation or last liquidation if there is probable cause to suspect fraud. Section 1621 provides a five year window—whether from discovery of fraud or commission of a negligent act—to add penalties for the fraud or negligence under section 1592 to the lawful liquidated amount. Query whether it was intended that there be a two year statute on reliquidation for fraud and five year statute for the collection of penalties based on the same underlying wrongful act.

The answer may lie, in part, in the distinction between civil fraud (1521) and criminal fraud. The Customs fraud statutory proscription is not penal. *United States v. Jac Natori Co., Ltd.,* 17 CIT 348, Slip Op. 93–70 at 12 (May 12, 1993). "It is 'rather to be regarded as remedial in * * * character, and intended to prevent fraud, suppress public wrong and promote the public good.'" *Id., citing One Hundred and Twenty-five Baskets of Champagne v. United States,* 70 U.S. 116, 121, 3 Wall. 114, 145 (1865). In *U.S. v. Godinez* 922 F.2d 752, 755 (11th Cir. 1991), the court held that the liquidation statutes—1514, 1520, 1521—did not apply in a criminal prosecution for import fraud under 18 U.S.C. § 541, which is governed by a five year statute of limitations. 18 U.S.C. § 3283. The Court can only surmise that since section 1592 prosecutions are not criminal, the liquidation statutes do apply.

Apparently, section 1521 operates to make the government whole upon discovery of fraud, whereas civil sanctions under section 1592 and criminal sanctions under 18 U.S.C. § 3283 function to punish the offender for the culpable act itself, regardless of out-of-pocket government losses. Yet this dichotomy does not solve the underlying inconsistency of holding importers accountable to defend liquidation for two years but holding the same importer on the same transaction accountable to defend a case for penalties for fraud or the lessor offenses of negligence for up to five years.

Perhaps, it is equitable to establish a shorter time period in which Customs must settle on the bill amount (liquidation), while extending the period for collection of penalties or lawful duties once the bill amount is settled. Nonetheless, Congress is signaling the importers that they are only expected to defend against a fraud reliquidation for two

years from discovery yet that they need be vigilant up to five years from discovery to defend against penalty assessments on the same underlying acts. Section 1592 therefore, at least as far as fraud is concerned, substantially limits the preclusive effect of the two year limitation in section 1521 from the perspective of a business, which is generally forward looking.

The government's line of analysis leads to a more glaring disparity. Subsection (d), by its language, clearly eliminates section 1514, the first of the above-noted liquidation provisions (§ 1514, § 1520, § 1521), whereas the second, relating to clerical errors is not relevant to fraud or negligence. Subsection (d) states "[n]otwithstanding section 1514 * * *", making no mention of section 1521. Thus, by elimination, the only liquidation limitation in left intact by the government's analysis is that for the more serious offense, fraud.

This logic turns the statutory intent of incremental punishment by the severity of the offense, as evidenced in section 1592(c), on its head. According to this logic, a company who knowingly commits fraud will have its liquidation (*i.e.,* assessment) of lawful duties frozen by the failure to act within two years by the Customs Service, whereas a company that is grossly negligent or merely negligent can have its liquidation for the purposes of assessing actual lawful duties reviewed and reassessed *ad infinitum.* This is a much more potent weapon in the Customs arsenal than the penalty statute itself. To allow such a rule, which is not statutorily authorized, is grossly unfair, against public policy, and an invitation for the government to bootstrap liquidation reviews by negligence allegations. Congress recognized the potential danger of this statutory interpretation by including a specific five year limitation on section 1592(d) actions in subsequent legislation signed December 8, 1993, entitled the Customs Modernization Act.[11]

The very language of section 1592(d) prior to the new act does not read consistently with Customs' interpretation, or its overly broad trite interpretation of *Blum.* After all, the predicate clause of subsection (d) requires a "violation of subsection (a)." In this, case, however, the parties have conceded that they are precluded from bringing an action based on a subsection (a) by the plain meaning of section 1621. That is, Customs' complaint would not survive a motion to dismiss under USCIT R. 12(b)(5) because no witnesses may be called, no facts alleged and no subsection (a) violation established pursuant to the five year statute of limitations in section 1621. The alleged grossly negligent acts were committed, if at all, over five years from the date that the Customs Service asserted its claims. Therefore, there is no predicate for collecting subsection (d) duties, even if theoretically there were no limitation

---

[11] Section 1621 now provides that "[n]o suit or action to recover any duty under section 592(d), 593A(d), or any pecuniary penalty or forfeiture of property accruing is under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered; except that—(1) in the case of an alleged violation of section 592 or 593A, no suit or action including a suit or action for restoration of lawful duties under subsection (d) or such sections) may be instituted unless commenced within 5 years after the date of the alleged violation * * *." 19 U.S.C. § 1621 (as amended by the Customs Modernization Act, 668 (December 8, 1993).

on their liquidation (*i.e.,* "[n]otwithstanding section 1514") or their collection (*i.e.,* defendant's reading is of section 1621).

To the same effect, the language completing subsection (d), "* * * whether or not a monetary penalty is assessed," cannot be read to mean "whether or not an action for penalties is time-barred." There is a clear meaning contained within section 1592 for this clause. For example, under section 1592(b)(2), the Customs' officer is permitted to mitigate, and presumably eliminate, the penalty despite the subsection (a) violation. Similarly, the Customs officer is instructed to mitigate penalties, with no restriction on how low they are reduced, for prior disclosures under section 1592(c)(4).

The Court finds that the true significance of subsection (d) is merely to contrast the discretion with which a Customs officer can mitigate a timely brought action on penalties against that officer's lack of discretion to mitigate lawfully owed duties that are discerned as a result of the same timely brought action for "[p]enalties for fraud, gross negligence, and negligence." *See* Title of 19 U.S.C. § 1592. This result is fair and just and sound public policy, in addition to being consistent with the statutory scheme. It is self-evident that all of the public policy reasons for placing statutes of limitations on violations, the establishment of which depend on subtle questions of proof, are as compelling in limiting the government's ability to *recalculate (i.e.,* reliquidate) original duty assessments which were paid in full, as they are in limiting the government's ability to collect those duties after five years of neglect. TIE's situation exemplifies these principles. TIE disclosed problems related to its 807.00 program, paid supplemental duties in full at the time of those discussions and reassessments. Meanwhile, TIE terminated its 807.00 program in 1986; TIE's New Jersey factory closed down; and TIE slipped into bankruptcy. TIE's experience is not an unusual course of event for a transborder enterprise over the span of five years. It makes no sense, as a public policy matter, to hold a company accountable to prove, more than five years after the fact, what was not contested by Customs at the time of importation. Section 1505(b) is undisturbed by this ruling because until Congress instructs otherwise, Customs is free to collect from TIE all unpaid lawfully liquidated or reliquidated duties (settled duty amounts) from the period of liquidation at any time in the future.[12]

The Court of Appeals for the Federal Circuit's decision in *Blum* was based on the sound principle that the sureties may not escape liability for the wrongful acts if the parties whose shoes they agreed to fill. The culpable company in *Blum* did violate to 19 U.S.C. § 1592(a); therefore subsection (d) was triggered by its terms. If the culpable company was not in a position to satisfy its section 1592(d) obligation to Customs, then it naturally fell upon the sureties to assume that obligation—

---

[12] In fact, as noted earlier, Congress has recently instructed otherwise, by amending section 1621. The Court need not address the retroactivity of the Customs amendments because the Court finds a limitation leading to the same result based on the law *as it existed at the initiation of this suit in this particular case.*

whether or not the sureties violated subsection (a) themselves. That is the essence of the *Blum* holding. The *Blum* court "did not and has not intimated what period of limitation, if any, applies * * *" to subsection 155 2(d). *Jac Natori,* at 15.

Subsection (a) and (d) are indeed not so dependant as to frustrate the very essence of suretyship. Neither, however, is subsection (d) so independent that it should be written entirely out of the statutory scheme surrounding it.

As the *Blum* court held, "[t]he plain language of subsection (d) provides for recovery of lost import duties resulting from a violation of subsection (a)." *Blum,* 858 F.2d at 1569. The crucial distinction between *Blum* and this case is that unlike *Blum,* there was no violation of subsection (a) by anyone at any time regarding entries over five years old. The government has indeed conceded that it is precluded from bringing suit on such actions. Thus, applying the court's holding in *Blum,* if there is no violation of subsection (a), no recovery of lost import duties based on that violation may result. *See id.*

The government's unrelenting assault with inapposite case law was sufficiently settled in this Court's prior ruling in this matter. *See Tie Communications v. United States,* Slip Op. 92–210 (November 25, 1992). There is, however, a more recent decision in this Court that merits discussion. After briefing in this case and after the issuance of Slip Op. 92–210, the Court had another opportunity to address the relationship between section 1521, 1621 and 1592(d). *See Jac Natori,* Slip Op. 93–70 (cited *supra).*

In that case defendant moved to dismiss the government's duty claim in part based on the contention that plaintiff's duty claim became stale as of two years after the date of discovery of the alleged fraud. The Court observed the inappropriateness of this contention, as it seemingly Confused section 1521 with the discovery rule of section 1621: "The former delimits the liquidator while the latter restricts the seeking of relief in court." *Id.* at 14.

The Court in *Jac Natori* held further that "section 1592(d) applies, notwithstanding 1514's conclusive finality, for its purpose is not liquidation but restoration of lawful duties. *Id. at 15–16, citing United States v. Ross* 6 CIT at 271, n.1, 547 F.Supp. at 1068 n.1 (1983), and *Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222 Before the Subcomm. on Trade of the House Comm. on Ways and Means,* 95th Cong., 1st Sess. 46, 57–58 (1977) (statement of Hon. Robert E. Chasen, Comm'r of Customs: "We interpret the subsection as allowing the government to collect all duties * * * even though liquidation of the entries would have become 'final' and not subject to challenge or reliquidation under any other provision of law") (other citations omitted). The *Jac Natori* Court concluded that defendant had not successfully pleaded that section 1521 limited collection of duties under section 1592(d) and that, in contrast to the presentations made before that Court, statutes of limitations on the actions of the sovereign must be clear to be enforce-

able. *Id.* at 16, *citing E.I. DuPont de Nemours Co. v. Davis* 264 U.S. 456, 462 (1924), and cases cited therein.

As discussed above, the Court need not, for me determination of this case, find a statute of limitations on Customs' ability to collect lawful duties. Customs is, however, by the plain language of section 1592(d), precluded from *reliquidating* the amount of those lawful duties notwithstanding the exception to section 1514 because Customs cannot and may not establish the predicate violation of subsection (a) to entitle it to such reliquidation. Since TIE Communications has already tendered the lawful duties as of the time of entry, that is the end of the matter.

Customs' protestations to the contrary are somewhat disingenuous in light of the full text of Commissioner of Customs' statement to Congress, omitted in the quoted material in *Jac Natori:* "We interpret the subsection as allowing the government to collect all duties (not previously collected) arising out of the discovery of a section 592 violation (whether or not a monetary penalty is assessed), *limited only by the five-year statute of limitations * * *." Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222 before the Subcomm. on Trade of the House Comm. on Ways and Means,* 95th Cong., 1st Sess. 46, 57–58 (1977) (statement of Hon. Robert E. Chasen, Comm'r of Customs) (emphasis supplied by the Court). Customs remained constant in its interpretation of Section 1592(d) until well after its enactment:

> [A] demand shall not be made for recovery of lawful duties if the violation * * * was due to gross negligence or negligence and if the demand would be issued 5 years or more after the violation * * *.

*United States Customs Service Policies & Procedures Manual,* No. 4400–09 Supplement (Sept. 17, 1982).

The Court concludes, based on the above findings of law and the parties' submissions and argumentation, that TIE is entitled to summary judgment on all claims for lawful duties made by the Customs Service that exceed five years in age. Those claims are time-barred by a plain reading of the predicate language contained in 19 U.S.C. § 1592(d) as limited by 19 U.S.C. § 1621. *Accord, U.S. v. RCA Corp., Consumer Electronics Division,* 5 IRTD 1807, 1810, No. IP 80–933–C, U.S. Dist. S.D. Indiana (Indianapolis Division) (Dec. 16, 1983). As such, it is unnecessary to rule on whether the newly enacted five year statute of limitations on section 1592(d) applies retroactively to claims that accrued before the enactment.

### III. *Plaintiff's Claim for Rescission of Settlement Agreement:*

As noted above, plaintiff claims that it was fraudulently induced into settling its liability regarding the initial notice of claim issued by the Customs Service on June, 21, 1990. Plaintiff asks the Court to rescind that agreement. Defendants, in their Motion for Summary Judgment, counter the United States Court of International Trade does not have

jurisdiction over this claim. Defendants' motion is denied. Plaintiff's motion is denied as well.

As stated earlier, The Court asserted jurisdiction over this case based on the constructive denial of TIE's protest, pursuant to 28 U.S.C. § 1581(a) and § 1518(i). Similarly, this Court has plenary power to review penalty assessments pursuant to 19 U.S.C. § 1592(e). Defendants' claim that TIE's second count should be dismissed because TIE has alleged a tort claim *(i.e.,* fraud) which is specifically excluded from the torts to which the government has waived sovereign immunity under the Federal Torts Claims Act. Just because TIE may not bring an action under the Federal Torts Claims Act does not mean this Court may not review the be savior of the Customs Service in its administration of the Customs laws—for that is the *essence* of this court's special jurisdiction in this domain.

Defendants' alternative position that TIE' second count claim is akin to an action for breach of contract that can only be properly heard in the United States Claims Court is equally unavailing. *See* Tucker Act, 28 U.S.C. § 1491. Query whether, according to this analysis, all claims by sureties based upon a Customs bond should now be transferred to the United States Claims Court. It is difficult to discern exactly what would be left for the United States Court of International Trade if the Customs Service were permitted to re-frame every issue of collection of duties and penalties under the Customs laws as a common law dispute for the district courts.

The Court cannot conclude, however, from the various submissions and affidavits of the parties that there is no factual dispute between them regarding the circumstances of TIE's inducement to settle the first series of claims.

Therefore, defendants' motion to dismiss the second count for lack of jurisdiction: is denied. Plaintiff's cross motion for summary judgment rescinding the settlement agreement is likewise denied. The matter of plaintiff's second count shall therefore become the subject of a scheduling order indicating any further discovery and setting a date agreeable to the parties for trial. If the parties cannot agree, the Court will set a date for trial pursuant to a scheduling conference to be held no later than thirty days from the date of this opinion.